**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

AUG 0 6 2024

TAMMY H. DOWNS, CLERK
By _[signature]_
DEP CLERK

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISON**

CARYDAH NJOROGE, on behalf of
herself and all others similarly situated,

Plaintiff,

vs.

SIMMONS BANK,

Defendant.

Case No. _4:24-cv-670-BRW_

CLASS ACTION

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

Plaintiff Carydah Njoroge ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action complaint against Simmons Bank ("Simmons" or "Defendant"). Plaintiff makes the following allegations based upon, *inter alia*, the investigation made by her counsel, and based upon information and belief, except as to those allegations specifically pertaining to Plaintiff which are based on her personal knowledge and allege the following:

### INTRODUCTION

1.      This is a proposed class action arising from the Simmons' routine and deceptive practice of assessing more than one fee when an "item" is returned or paid into overdraft.

2.      As alleged more fully herein, Simmons' "TERMS AND CONDITIONS OF YOUR ACCOUNT" ("Deposit Agreement"), in concert with its Fee Schedule ("Fee Schedule"), allow it to charge a *single* $35 Insufficient Funds Fee or a *single* $35 Overdraft Fee when an item is returned for insufficient funds or paid into insufficient funds.

3.      Simmons, however, breaches its contractual documents when it charges *more* than

This case assigned to District Judge _Wilson_
and to Magistrate Judge _Volpe_

one $35 fee on the same item.

4.      This abusive practice is not universal in the financial services industry. Indeed, major banks like Chase—the largest consumer bank in the country—do not undertake the practice of charging more than one fee on the same item when it is reprocessed.  Instead, Chase charges one fee even if an item is resubmitted for payment multiple times.

5.      This practice is a breach of Simmons' contractual promise, violates the covenant of good faith and fair dealing, or, in the alternative, results in Simmons being unjustly enriched.

6.      Simmons' customers, including Plaintiff, have been injured by its improper and deceptive practices to the tune of millions of dollars bilked from their accounts in violation of their agreements with Simmons.

7.      On behalf of herself and the Class, Plaintiff seeks, *inter alia*, damages and restitution as set forth more fully below.

## PARTIES

8.      Carydash Njoroge is a resident of Springfield, Missouri and, at all material times, held a checking account with Simmons.

9.      Defendant Simmons is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the putative Class.  Simmons has its headquarters in Pine Bluff, Arkansas. Simmons has $16.5 billion in assets and provides banking services to customers through 230 bank branches in the states of Arkansas (84 branches), Colorado (3 branches), Illinois (4 branches), Kansas (6 branches), Missouri (45 branches), Oklahoma (18 branches), Tennessee (48 branches), and Texas (22 branches).  Simmons is the third largest bank in Arkansas based on total deposits.   Simmons operates banking centers, and thus conducts business, throughout the State of Arkansas, including three branches in Jonesboro.

2

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the amount in controversy, exclusive of costs and interest, exceeds the sum of $5,000,000.00, (2) the proposed Class is comprised of at least 100 members, and (3) complete diversity exists between at least one plaintiff and one defendant.

11.     The Court has personal jurisdiction over Defendant because it maintains its headquarters in this district. As such, Defendant maintains minimum contacts with Arkansas such that an exercise of personal jurisdiction by this Court does not offend traditional notions of fair play and substantial justice.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Simmons is subject to personal jurisdiction here and regularly conducts business in this district. Also, a substantial portion of the events or omissions giving rise to the claims asserted herein occurred in this district.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

**A.     The Imposition of Multiple Fees on a Single Transaction Violates Simmons' Express Promises and Representations.**

18.     Simmons' Deposit Agreement and Fee Schedule state that a singular fee can be assessed on checks, ACH debits, and electronic payments.

19.     Simmons' Fee Schedule states that it will charge *$35 per item* that is returned due to insufficient funds or paid into overdraft.

20.     According to the Fee Schedule, at most a *single* fee will be assessed when an "item" is returned or paid into overdraft:

> A fee may be imposed if you overdraw your account. When you write a check, withdraw money in person or from an ATM, use your debit card to make a purchase, or make an

3

automatic bill payment or other electronic payment for more than the amount in your account; you overdraw your account. Simmons Bank has the choice to either pay the item or not. If we pay even though you don't have the money in your account; you may be charged a Paid Item Fee (Overdraft Fee). If we return your item without paying it you may be charged a Return Item Fee (Insufficient Funds (NSF) Fee [sic]. (Exceptions: Paid Item/Overdraft and Return Item/Insufficient Funds Fees are not charged on Affordable Advantage Checking accounts.)

[…]

Paid Item/Overdraft Fees on consumer accounts will not exceed $210.00 on any one given day.

| Paid Item/Overdraft Fee Per Item | Non-Customer Not offered | Customer $35.00 |
|---|---|---|

[…]

| Return Item/Insufficient Funds (NSF) Fee Per Item | Non-Customer Not offered | Customer $35.00 |
|---|---|---|

Fee Schedule, p. 5 (Exh. A hereto).

21.     The same "check…automatic bill payment or other electronic payment" on an account cannot conceivably become a new item each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit the item.

22.     There is zero indication anywhere in the Deposit Agreement or Fee Schedule that the same "check…automatic bill payment or other electronic payment" is eligible to incur multiple fees.

23.     Even if Simmons reprocesses an instruction for payment, it is still the same "check…automatic bill payment or other electronic payment." The Defendant's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

24.     Indeed, the language quoted above makes clear that it is the action of the accountholder, and only the accountholder, that creates an item:  "When *you write a check*, *withdraw money* in person or from an ATM, *use your debit card* to make a purchase, *or make an*

4

*automatic bill payment* or other electronic payment . . . ." As alleged herein, Plaintiff took only a single action to make a single payment; she may therefore be charged only a single fee.

25.     Moreover, by expressly linking Overdraft Fees and Insufficient Funds Fees in the disclosure, Simmons bolsters the reasonable assumption that only a single fee can be assessed on an item. Here's why: For an item charged an "overdraft fee" and thus paid into overdraft, there is no chance it can be subject to reprocessing and thus no chance it could be subject to a second or third fee, since it has already been paid. No reasonable contract reading by any consumer could allow the *other* fee mentioned in the disclosure—the Insufficient Funds Fee—to be treated so differently and assessed two or three times on the same item.

26.     The disclosures described above never discuss a circumstance in which Simmons may assess multiple fees for an item that was returned for insufficient funds and later reprocessed one or more times and returned again (incurring an Insufficient Funds Fee) or paid (incurring an Overdraft Fee).

27.     In sum, Simmons promises that one $35 Insufficient Funds Fee or one $35 Overdraft Fee will be assessed per ACH debit or check, and these terms must mean all iterations of the same instruction for payment. As such, Simmons breached the contract when it charged more than one fee per item.

28.     Reasonable consumers understand any given authorization for payment to be one, singular "check…automatic bill payment or other electronic payment," as those terms are used in Simmons' Fee Schedule.

29.     Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same "item," which the Defendant will either authorize (resulting in an overdraft item) or reject

5

(resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere does Simmons disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor do Simmons customers ever agree to such fees.

30.     Customers reasonably understand, based on the language of the Fee Schedule and Simmons' other account documents, that the Defendant's reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger additional fees. In other words, it is always the same item.

31.     Banks like Simmons that employ this abusive multiple fee practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their accountholders—something Defendant only recently started doing. Simmons' most recent Personal Account Terms and Conditions now disclose this practice, stating:

> **Multiple Requests for Payment –** If we return an item, the party that presented the item for payment might have the right to make a second or subsequent request for payment. If we receive such a second or subsequent request for payment, we will treat the request as an independent item different from the item(s) previously presented. This means that if a second or subsequent request for payment is made, and at that time it again exceeds the applicable available balance on your account, we may either pay or return the item and if we pay the item, then we may charge a Paid Item/Overdraft Fee.

Ex. B, p. 3.

32.     As another example, First Hawaiian Bank engages in the same practice as Defendant, but at least currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

(emphasis added).

6

33.     Klein Bank similarly states in its online banking agreement:

[W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.

34.     Simmons provides no such disclosure and, in so doing, deceives its accountholders.

**B.      The Imposition of Multiple Fees on a Single Transaction Breaches Simmons' Duty of Good Faith and Fair Dealing.**

35.     Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are invested with a discretionary power over the other party.  In such circumstances, the party with discretion is required to exercise that power and discretion in good faith.  This creates an implied promise to act in accordance with the parties' reasonable expectations and means that the Defendant is prohibited from exercising its discretion to enrich itself and gouge its customers.  Indeed, the Defendant has a duty to honor transaction requests in a way that is fair to Plaintiff and its other customers and is prohibited from exercising its discretion to pile on ever greater penalties.  Here—in the adhesion agreements Simmons foisted on Plaintiff and its other customers—Simmons has provided itself numerous discretionary powers affecting customers' accounts.  But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, the Defendant abuses that discretion to take money out of consumers' accounts without their permission and contrary to their reasonable expectations that they will not be charged multiple fees for the same transaction.

36.     Simmons exercises its discretion in its own favor—and to the prejudice of Plaintiff and its other customers—when it defined "item" in a way that directly leads to more fees.  Further,

7

Simmons abuses the power it has over customers and their bank accounts and acts contrary to their reasonable expectations under the Fee Schedule and Deposit Agreement.  This is a breach of the Defendant's implied covenant to engage in fair dealing and act in good faith.

37.     Simmons stated only that it "may" assess these fees: "If we pay even though you don't have the money in your account; you may be charged a Paid Item Fee (Overdraft Fee).  If we return your item without paying it you may be charged a Return Item Fee (Insufficient Funds (NSF) Fee [sic]."  But it is standard policy to always do so, multiple times on the same item.  This is an abuse of discretion.

38.     By interpreting this discretion in its own favor—and to the prejudice of Plaintiff and other customers—to allow the Defendant to charge more than one fee on a single item, Simmons breaches the reasonable expectation of Plaintiff and other customers and in doing so violates the implied covenant to act in good faith.

39.     Simmons acted in bad faith and with disregard for the Plaintiff's reasonable expectations when it assessed two fees for a single attempted payment.

40.     The multiple fees on the same item practice used by Simmons has one purpose:  to maximize fee revenue for the Defendant.

41.     In addition to the discretion as to whether to pay or reject a transaction, Simmons also provides itself significant discretion as to whether or not to charge fees on a given transaction.

42.     By exercising its discretion in its own favor—and to the prejudice of Plaintiff and other customers—by engaging in its multiple fee conduct, Simmons abused the power it has over Plaintiff and her bank account and acts contrary to customers' reasonable expectations under the Deposit Agreement.  This is a breach of the Defendant's implied covenant to engage in fair dealing and act in good faith.

**Plaintiff Njoroge's Experience.**

43.    In support of her claims, Plaintiff offers an example of fees that should not have been assessed against her checking account.

44.    As alleged below, Simmons: (a) reprocessed a previously declined item an additional time; and (b) charged an additional fee upon reprocessing.

45.    In or around September 2020, Plaintiff was assessed multiple fees on an item.

46.    Plaintiff understood the payment to be a single item pursuant to the terms of Simmons' contract, capable at most of receiving a single Insufficient Funds Fee (if Simmons returned it) or a single Overdraft Fee (if Simmons paid it).

## CLASS ACTION ALLEGATIONS

47.    Plaintiff brings this action on behalf of herself and on behalf of all others similarly situated pursuant to Federal Rule 23.  The Class includes:

> All persons who, within the applicable statute of limitations period, were charged multiple fees for the same debit item in a Simmons checking account.

48.    Excluded from the Class is Defendant, Defendant's subsidiaries and affiliates, its officers, directors, and the members of its immediate families, and any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of its immediate families.

49.    Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add a subclass or subclasses if necessary before the Court determines whether certification is appropriate.

50.    The parties are numerous such that joinder of them all is impracticable.  Upon information and belief, and subject to class discovery, the Class consist of thousands of members

or more, the identities of whom are within the exclusive knowledge of and can be ascertained only by resort to Simmons' records. Simmons has the administrative capability through its computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to Plaintiff.

51.     The Class will face common questions such that there is a well-defined community of interest among the members of the Class. These questions predominate over questions that may affect only individual class members because Simmons has acted on grounds generally applicable to the Class. Such common legal or factual questions include, but are not limited to:

a)      Whether Simmons improperly charged more than one fee on the same item;

b)      Whether any of the conduct described above violates the contract;

c)      Whether any of the conduct described above violates the covenant of good faith and fair dealing;

d)      Whether any of the conduct described above constitutes unjust enrichment; and

e)      The appropriate measure of damages.

52.     Plaintiff's claims are typical of the claims of other members of the Classes, in that they arise out of the same wrongful conduct, policies and practices. Plaintiff has suffered the same harm alleged and has no interests antagonistic to the interests of any other member of the Classes. Furthermore, the factual basis of Simmons' misconduct is common to all members of the Classes and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes. And Simmons has no unique defenses that would apply to Plaintiffs and not the Classes.

53.     A class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual Class members will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation,

especially when compared to the comparatively modest amount of monetary relief available for each individual Class member. Moreover, prosecution of separate actions by individual Class members would create a risk inconsistent or contradictory judgments, lead to the duplication of evidence, effort, and expense, and unnecessarily overwhelm the court system. The benefits of class treatment, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action. Plaintiff does not anticipate any difficulty in the management of this litigation as a class action.

54.     Plaintiff is more than an adequate representative of the Class in that Plaintiff has or had a Simmons checking account and has suffered damages as a result of Simmons' misconduct. In addition:

a)     Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

b)     There is no conflict of interest between Plaintiff and the unnamed members of the Class;

c)     Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

d)     Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

55.     Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

56.     Simmons has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

57.     All conditions precedent to bringing this action have been satisfied and/or waived.

11

## CAUSES OF ACTION

### COUNT I

**BREACH OF CONTRACT AND BREACH OF THE
COVENANT OF GOOD FAITH AND FAIR DEALING**
**(On Behalf of Plaintiff and the Class)**

58.     Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1-57 as if fully set forth herein.

59.     Plaintiff and Simmons contracted for checking account services, as embodied in the Deposit Agreement and Fee Schedule.

60.     Simmons breached the terms of the Deposit Agreement and Fee Schedule by, *inter alia*, charging multiple fees on the same transaction.

61.     Plaintiff and members of the putative Class have performed all of the obligations on them pursuant to the Defendant's Deposit Agreement and Fee Schedule.

62.     Plaintiff and members of the putative Class have sustained monetary damages as a result of each of Defendant's breaches.

63.     Arkansas law mandates that an implied covenant of good faith and fair dealing govern every contract.  For banking transactions, this is also mandated by the Uniform Commercial Code that has been adopted in each state.  The covenant of good faith and fair dealing constrains Defendant's discretion to abuse self-granted contractual powers. The covenant of good faith and fair dealing is an implied promise contained in every contract that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Good faith is also mandated by the Uniform Commercial Code ("UCC"), which covers banking transactions.

64.     Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

65.     This good faith requirement extends to the manner in which a party employs discretion conferred by a contract.

66.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified.  A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Other examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

67.     Here, Simmons breached the covenant of good faith and fair dealing by charging multiple fees on the same transaction.

68.     Defendant acted without good faith, did not deal fairly, and acted in a manner that was arbitrary and capricious.

69.     Plaintiff and members of the putative Class have performed all of the obligations imposed on them pursuant to the Deposit Agreement.

70.     Plaintiff and members of the putative Class have sustained monetary damages as a result of each of Defendant's breaches of the covenant of good faith and fair dealing.

## COUNT II
## UNJUST ENRICHMENT

### (In the Alternative to COUNT I)
### (On Behalf of Plaintiff and the Class)

71.     Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1-57 as if fully set forth herein.

72.     This Count is brought solely in the alternative to Count I. Plaintiff acknowledges that her breach of contract claim cannot be tried along with unjust enrichment.

73.     To the detriment of Plaintiff and the Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

74.     Plaintiff and the Class conferred a benefit on Defendant when they paid Defendant the fees that were not disclosed or allowed for in the in the Deposit Agreement and Fee Schedule.

75.     Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits which, under the circumstances, would be unjust to allow Defendant to retain.

76.     Plaintiff and the Class, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, pray for an order:

1.      Certifying the proposed Class pursuant to Federal Rule of Civil Procedure 23, appointing Plaintiff as representative of the Class, and appointing counsel for Plaintiff as counsel for the respective Class;

2.      Declaring that Defendant's policies and practices as described herein constitute a breach of contract and a breach of the covenant of good faith and fair dealing or unjust enrichment;

14

3.      Awarding restitution of all fees at issue paid to Defendant by Plaintiff and the Class as a result of the wrongs alleged herein in an amount to be determined at trial;

4.      Compelling disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

5.      Awarding actual and/or compensatory damages in an amount according to proof;

7.      Awarding pre-judgment interest at the maximum rate permitted by applicable law;

8.      Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses, pursuant to applicable law and any other basis; and

9.      Awarding such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated: August 6, 2024

Respectfully submitted,

Scott Poynter, Esq. AR Bar No. 90077
POYNTER LAW GROUP
4924 Kavanaugh Blvd.
Little Rock, AR 72207
(501) 812-3943
*scott@poynterlawgroup.com*

15

Jeffrey D. Kaliel*
Sophia G. Gold*
KALIELGOLD PLLC
1100 15th Street NW, 4th Floor
Washington, D.C.  20005
(202) 350-4783
jkaliel@kalielgold.com
sgold@kalielgold.com

Andrew Shamis*
SHAMIS & GENTILE, P.A.
14 NE 1st Avenue, Suite 705
Miami, FL 33132
(305) 479-2299
ashamis@shamisgentile.com

*Counsel for Plaintiff and the Proposed Class*

*\* pro hac vice forthcoming*